### PRESCOTT CLARK *vs.* ASA HOLDEN & others.

Cutting timber trees on woodland by tenant for life, not for the use of the estate, is waste, although done with the intention of restoring the land to the condition of pasture land, in which it was when the estate for life commenced; and although it would be good husbandry in an owner in fee so to restore it.

TRESPASS for breaking and entering the plaintiff's close in Billerica, and carrying away twenty cords of wood. At the trial in the court of common pleas at September term 1852, before *Merrick*, J., there was evidence of the following facts :

About 1825 a tract of land of about twelve acres was set off to Hannah Marshal, widow of Josiah Marshal, as her dower. A part of it was then woodland, and the rest of it pasture. The latter had not been cultivated or depastured since said Josiah's death, but wood had been permitted to grow thereon, which was principally pine, some scattering trees of which had attained a diameter of from ten to fifteen inches, and the remainder was young wood. In the winter of 1849–50 the plaintiff, who was a tenant of the widow, cut thereon about forty cords of wood, which was all that was then worth cutting, under an agreement with the widow that he should receive either one dollar per cord, or one half of the wood; and afterwards removed his half of the wood to another part of the land, and piled it up there; and Holden, who was the owner of the reversion of the land, entered with the other defendants, and carried away said wood.

The defendants requested the court to instruct the jury that inasmuch as the widow had suffered the pasture land to become woodland, neither she nor any person claiming under her could use such woodland for any purpose for which she could not have used woodland which was such when set off to her; and also that the widow had no right to give to the plaintiff any part of the wood in payment for cutting the same, and that the wood cut by the plaintiff under such an agreement did not vest in him, but remained the property of the reversioner.

The court declined so to instruct the jury; but did instruct them, ' that if the widow did suffer the said pasture land to become woodland, it was waste, for which Holden might have obtained a forfeiture of the place wasted, if he had seasonably entered ; that if the widow cut or caused to be cut the said wood for sale, or for any purpose except for use upon the dower estate, or to restore the said woodland to pasture land, it was waste, and the defendants were not liable for taking said wood ; but that if, before an entry by Holden, the widow in good faith cut or caused to be cut the wood standing upon land which had thus become woodland, with the intention of restoring such land to pasture land, she was justified in so doing, and the defendants were liable for taking the wood, when cut; and also that the burden of proof was upon the defendants to show that the said wood was not cut for the purpose of restoring the land as aforesaid ; but that, if said pasture had not grown up to woodland, the widow would have a right to clear up such pasture, and the small wood so cleared off would not belong to Holden."

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions, which were argued and decided at October term 1853.

*J. P. Converse,* for the defendants. The cutting of the wood, under the circumstances of this case, after it had been permitted to grow for such a length of time, was waste ; and the wood, when cut, vested in the reversioner. If not necessarily waste, it was at least so *prima facie,* and the burden was upon the plaintiff to show a justification. The agreement of the plaintiff with the widow to receive the wood in payment for the cutting was void, and passed no title to the wood, as against the reversioner. 1 Cruise Dig. (Greenl. ed.) tit. 3, *c.* 2, § 13. Park on Dower, 357. *Kidd* v. *Dennison,* 6 Barb. 9. *Elliot* v. *Smith,* 2 N. H. 430. *Fuller* v. *Wason,* 7 N. H. 341.

*B. F. Butler,* for the plaintiff. The trespass proved by the plaintiff can only be justified by the defendants on the ground that the cutting of the wood was waste. The question whether, under the circumstances, the cutting of the wood was waste, or

good husbandry, was a question for the jury. 1 Cruise Dig (Greenl. ed.) tit. 3, *c.* 2, § 5, *note. Jackson* v. *Brownson,* 7 Johns. 227. *Chase* v. *Hazelton,* 7 N. H. 171. *Keebe* v. *Eastman,* 11 Verm. 293. The burden was on the defendants to show the cutting to be waste; and the same evidence was necessary to maintain this defence, as to maintain an action of waste against the plaintiff. It is not waste to clear pasture of brush and wood that has grown up therein, and to restore the premises, in order to prevent liability for waste, and a forfeiture of the premises. The conversion of one kind of land into another, as of woodland, meadow or pasture into arable land, or of meadow, pasture or arable into woodland, or of arable or woodland into meadow or pasture, is waste. 2 Bl. Com. 281, 282. 1 Cruise Dig. tit. 3, *c.* 2, § 18. *Jackson* v. *Brownson,* 7 Johns. 227.

BIGELOW, J. The court erroneously ruled that changing the estate from pasture to woodland, by the tenant in dower, by suffering wood to grow up on land which was pasture before, was waste. *Pynchon* v. *Stearns,* 11 Met. 304. As that instruction, however, was in favor of the defendant, it would be no ground for granting him a new trial.

But there was an essential error in the instructions of the court, which diverted the attention of the jury from the real issue, and tended to prejudice the defendant's case. The justification on which they rested their defence was, that the wood, claimed by the plaintiff under his agreement with the tenant in dower, in fact belonged to the owner of the fee, because in cutting it she had committed waste. This was the only question before the jury. As the defendants were bound to establish their justification, the burden was on them to show that, in cutting the wood in controversy, a lasting damage had been done to the freehold or inheritance. But they were not bound to prove any thing beyond this. The intent or motive with which the tenant in dower acted was wholly immaterial to this issue. A tenant for life cannot pull down buildings, cut off timber trees, or do other acts which tend to the disherison of the remainderman or reversioner, and justify them on the ground that he acted in good faith, without any purpose of permanently injuring the estate.

Clark *v.* Holden & others.

Such acts, in law, constitute waste, for which the tenant for life is liable, however innocent or honest may have been the purpose with which they were done. It was therefore clearly erroneous in the judge to instruct the jury that the defendants were bound to show that the cutting of the wood by the tenant in dower was not done in good faith. *Exceptions sustained.*

. A new trial was had in the court of common pleas at September term 1854, at which the evidence was the same, and the defendants requested instructions similar to those asked for at the former trial.

*Bishop,* J. declined to give the instructions requested; and instructed the jury " that it was a question of fact for the jury, whether the cutting of the wood was in accordance with good husbandry; that, if it was, the widow, or her servant or agent, was justified in so doing, and the defendants were liable for taking said wood."

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions, which were argued by the same counsel at October term 1855.

SHAW, C. J. Upon the facts appearing in the bill of exceptions, the court are of opinion that, although the land was pasture when it was set off to the widow as dower, yet if she permitted it to become woodland, bearing a growth fit for timber, and it was *de facto* such woodland when the wood and timber were cut, such cutting was waste, in the same manner and to the same extent as it would have been, had it been woodland of the same description when it was set off to her as dower. It was wood and timber land when the timber was cut; it was held by a tenant for life; and therefore cutting timber and other wood, for purposes other than the use of the estate, for timber and fuel, by tenant for life, was waste. The wood and timber, when severed, became by law the personal property of Holden, who was the reversioner, having the next right to enter and become seised; and therefore he was justified in entering the close, and taking the wood, which was thus his property. The tenant in dower had no right, after the land had become covered

with a growth of wood and timber by her permission, to cut it, beyond the amount required for the estate itself, even though it might have been good husbandry in an owner in fee thus to take off the wood and timber, clear up the land, and thus again bring it under cultivation. Such owner in fee would be the owner of the wood and timber, with a full right of disposing of it; but in case of the land held in dower the reversioner is the owner of the growing wood and timber, with a qualified interest in the soil, sufficient to its nourishment and growth, which right the tenant in dower cannot legally defeat. The judge who tried the cause having instructed the jury otherwise the verdict is set aside, and a            *New trial granted.*